In re AIR CRASH DISASTER NEAR CHICAGO, ILLINOIS, ON MAY 25, 1979.

This Document Relates To: 79 C 2272, 79 C 2310, 79 C 2311, 79 C 2440, 79 C 2444–79 C 2446, 79 C 2518, 79 C 2551–79 C 2554, 79 C 2573, 79 C 2730, 79 C 2770, 79 C 2822, 79 C 2823.

No. MDL 391.

United States District Court, N. D. Illinois, E. D.

Dec. 6, 1979.

John J. Kennelly, Chicago, Ill., Speiser & Krause, New York City, Speiser, Krause & Madole, Washington, D.C., for plaintiffs.

Thomas D. Allen, Robert E. Haley and Michael Grant of Wildman, Harrold, Allen

& Dixon, Chicago, Ill., for defendant American Airlines, Inc., Norman J. Barry, Joseph P. Della Maria, Jr., and Roger J. Guerin of Rothschild, Barry & Myers, Chicago, Ill., for defendant McDonnell Douglas Corp.

## MEMORANDUM OPINION

ROBSON and WILL, District Judges.

The present cases arise from the crash of an American Airlines jet near O'Hare International Airport on May 25, 1979. These and other cases filed in the wake of the crash have been consolidated in this Court for pretrial proceedings. Plaintiffs, administrators or executors of the estates of persons who died in the crash or surviving relatives of crash victims, brought wrongful death actions against American Airlines, the air carrier; McDonnell Douglas, the manufacturer of the aircraft; and other defendants.[1] Federal jurisdiction in this Court is founded on diversity of citizenship under 28 U.S.C. § 1332. Plaintiffs included in their complaints claims for interest on any future judgment from May 25, 1979, the date of the crash, at the rate of ten percent or such other rate as the Court shall determine. The plaintiff in one of the cases has moved for summary judgment on her claim for prejudgment interest. Defendant American Airlines has moved for dismissal of the claims for prejudgment interest in the other cases.

These motions raise three issues: (1) what law the Court should apply in the present cases, (2) whether, under the applicable law, prejudgment interest is available in wrongful death actions, and (3) if prejudgment interest is available, whether it is proper to grant summary judgment at this time. In light of our resolution of these issues, as set forth below, we deny defendant American Airline's motion to dismiss the claims for prejudgment interest, and deny plaintiff Kahmi's motion for summary judgment on her claim for prejudgment interest.

## I.

■ No federal statutory law provides an answer to the question whether prejudgment interest is available in the present cases. The basic federal interest statute, 28 U.S.C. § 1961, deals only with postjudgment interest. It provides:

Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . . Such interest shall be calculated from the date of the entry of the judgment, at the rate allowed by State law.

The statute's silence on the issue of prejudgment interest does not mean, however, that prejudgment interest is unavailable in federal courts. Rather, courts generally have held, and we agree, that prejudgment interest is an item of substantive damages the availability of which in diversity cases customarily is determined by state law. *Illinois Central RR. v. Texas Eastern Transmission Corp.*, 551 F.2d 943, 944 (5th Cir. 1977); *Glens Falls Insurance Co. v. Danville Motors, Inc.*, 333 F.2d 187, 191 (6th Cir. 1964); *Oresman v. G. D. Searle & Co.*, 388 F.Supp. 1175, 1178 (D.R.I.1975). *See also Restatement (Second) Conflicts of Laws*, § 17, Comment C. *But see In re Paris Air Crash of March 3, 1974*, 69 F.R.D. 310, 322 (C.D.Cal.1975) (court concluded, without discussion, that 28 U.S.C. § 1961 precluded an award of prejudgment interest in cases brought in federal court).

■ In cases such as the present ones, which involve parties and events touching a number of states, the question arises as to which state's law applies. For the answer, we look to Illinois' conflict of law rules. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ Under Illinois conflicts law, the issue of damages in a wrongful death action is governed by the law of the state where the injury occurred unless some other state has a more significant relationship to the

---

1. General Electric Co. was and Rockford Aerospace Products, Inc. is also a defendant in some of these cases.

parties and the occurrence, in which case the law of the other state applies. *Ingersoll v. Klein*, 46 Ill.2d 42, 48, 262 N.E.2d 593, 596 (1970); *Semmelroth v. American Airlines*, 448 F.Supp. 730, 732 (E.D.Ill.1978). To determine whether another state has a more significant relationship, courts examine the contacts between the case and the state and evaluate these contacts according to their relative importance to the particular issue presented in the case.

■ Where, as here, the principal issue is damages in a wrongful death action, the domicile of the decedent and beneficiaries may also be important. The domicile state has an interest in the litigation since it is concerned with the administration of the decedent's estate and with the provision of adequate compensation to the decedent's surviving relatives. *Gordon v. Eastern Air Lines, Inc.*, 391 F.Supp. 31, 33 (S.D.N.Y. 1975); *Manos v. Trans World Airlines, Inc.*, 295 F.Supp. 1170, 1173 (N.D.Ill.1969).

As regards the majority of the present cases, it is clear that no state other than Illinois could have a more significant relationship to the occurrence or the parties. In *Spicuzza v. American Airlines, Inc.*, No. 79 C 2310, *LaSalle National Bank v. American Airlines, Inc.*, No. 79 C 2311, *Haider v. McDonnell Douglas Corp.*, No. 79 C 2551, *Schade v. McDonnell Douglas Corp.*, No. 79 C 2552, *Schade v. McDonnell Douglas Corp.*, No. 79 C 2553, *Schade v. McDonnell Douglas Corp.*, No. 79 C 2554, *First Bank and Trust Company of South Bend v. McDonnell Douglas Corp..*, No. 79 C 2573, *Bennett v. McDonnell Douglas Corp.*, No. 79 C 2730, *Davis v. McDonnell Douglas Corp.* No. 79 C 2770, *Huth v. McDonnell Douglas Corp.*, No. 79 C 2445, *Huth v. McDonnell Douglas Corp.*, No. 79 C 2446, and *Sheridan v. McDonnell Douglas Corp.*, No. 79 C 2440, the administrators or executors of the estates of air crash victims are citizens of Illinois and the estates are being administered in Illinois.[2]

With regard to one of the other cases, however, California may have a more significant relationship to the parties than does Illinois. The plaintiffs in *Blake v. McDonnell Douglas Corp.*, No. 79 C 2518, surviving relatives of a victim of the crash, are citizens of California. Similar considerations lead us to conclude that Wisconsin may have a more significant relationship than Illinois to *First Wisconsin Bank v. McDonnell Douglas Corp.*, No. 79 C 2823, since the First Wisconsin Bank is the administrator of the estate of a Wisconsin resident who died in the crash.

■ We find, however, that we need not decide which state's law applies in any of these cases with respect to the issue of prejudgment interest. Only in cases where a conflict exists between the laws of the various states would it be necessary for us to decide which state's law applies. *Manos v. Trans World Airlines, Inc., supra* at 1173. Where all of the states whose laws might apply have substantially the same law, no conflict is presented. As our discussion below indicates, prejudgment interest is available in these cases under Illinois, California, and Wisconsin law. No true conflict of laws therefore exists in these cases; consequently, there is no need to decide which state's law applies.

## II.

■ Cal.Civil Code, § 3288, provides:

IN ACTIONS OTHER THAN CONTRACT. In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury.

California courts have held that § 3288 allows a trier of fact[3] to award prejudgment interest if the plaintiff's damages were liquidated or reasonably ascertainable prior to

---

**2.** In addition, the decedents presumably were citizens of Illinois prior to their deaths and they may have purchased their tickets in Illinois for the flight which originated in Illinois and ended untimely in Illinois.

**3.** Although the statute refers only to juries, judges acting as triers of fact also may award prejudgment interest. *See Nordahl v. Franzalia*, 48 Cal.App.3d 657, 665, 121 Cal.Rptr. 794, 799 (1975).

trial. *See Bullis v. Security Pacific National Bank*, 21 Cal.3d 801, 814, 148 Cal.Rptr. 22, 29, 582 P.2d 109 (1978); *Nicholson-Brown, Inc. v. City of San Jose*, 62 Cal.App.3d 526, 534, 133 Cal.Rptr. 159, 164–65 (1976). Thus it appears that prejudgment interest is available under California law in the present cases.[4]

It also appears that prejudgment interest is available under Wisconsin law in the present cases. Wisconsin courts generally award interest on a judgment from the time the plaintiff presents his demands to the defendant or, if no demand is made, from the time the plaintiff files his suit if the claim is liquidated or reasonably ascertainable and if there are "no other factors which prevented the withholding party from determining the amount which should be tendered." *Pappas v. Jack O. Nelson Agency, Inc.*, 81 Wis.2d 363, 374, 260 N.W.2d 721, 726–27 (1978); *Wyandotte Chemicals Corp. v. Royal Electric Mfg. Co., Inc.*, 66 Wis.2d 577, 584, 225 N.W.2d 648, 652 (1975).

■ One factor which may prevent a defendant from determining the damages he owes, and thus may keep a court from awarding prejudgment interest, is the presence of multiple defendants. *Wyandotte Chemicals Corp. v. Royal Electric Mfg. Co., supra* at 585, 225 N.W.2d at 654; *City of Franklin v. Badger Ford Truck Sales, Inc.*, 58 Wis.2d 641, 654–55, 207 N.W.2d 866, 874 (1973). In cases involving multiple defendants, under the applicable Wisconsin law, damages are apportioned among the defendants depending upon each defendant's relative responsibility for the loss. *Id.* at 657, 207 N.W.2d at 871. Because a defendant in a multi-defendant case cannot ascertain in advance of judgment to what degree he will be held liable, he cannot determine the proportion, if any, of the

damages he owes. Thus, Wisconsin courts have decided that it is unfair to subject a defendant in such a case to liability for prejudgment interest. *Wyandotte Chemicals Corp. v. Royal Electric Mfg. Co., supra* at 585, 225 N.W.2d at 654; *City of Franklin v. Badger Ford Truck Sales, Inc., supra* at 657, 207 N.W.2d at 874. Apparently, however, under Wisconsin law, a defendant in a multi-defendant case would be liable for prejudgment interest absent any difficulty in ascertaining the damages he owes.

■ Since there is no question of apportionment here, the defendants can determine the damages they owe. We believe, therefore, that prejudgment interest is available in these cases under Wisconsin law despite the presence of multiple defendants. We have no doubt that, so far as liability, as opposed to damages, is concerned, Illinois law is applicable in the present cases.[5] Under Illinois law, multiple defendants are jointly and severally liable and there is no apportionment of damages among multiple defendants. *Trzos v. Berman Leasing Co.*, 86 Ill.App.2d 176, 181, 229 N.E.2d 787, 790 (Ill.App.Ct.1967); *Michels v. Bezley*, 12 Ill.App.2d 456, 459, 140 N.E.2d 134, 136 (Ill.App.Ct.1957). Although a defendant in a multi-defendant case may have a right of contribution from another defendant, it does not affect the defendant's obligation to the plaintiff. Since the defendants in the present case can determine the damages, if any, that they owe, prejudgment interest is available under Wisconsin law in the present cases.

Prejudgment interest is also available in the present cases under Illinois law. Illinois courts have frequently held that, absent an agreement between the parties, prejudgment interest is generally available only

4. We need not determine at this time whether plaintiffs' damages are, in fact, liquidated or reasonably ascertainable, although they would appear to be the latter, nor must we decide whether a trier of fact would award prejudgment interest in these cases. It is sufficient for our purposes to note that plaintiffs may be entitled to prejudgment interest under Califor-

nia law. *See Parr v. Great Lakes Express Co.*, 484 F.2d 767, 770 (7th Cir. 1973).

5. No state other than Illinois can conceivably have a more significant interest in the determination of liability. Furthermore, fairness requires that the question of liability be uniformly determined in each of the cases arising from a single accident.

where provided by statute.[6] *Stevenson v. ITT Harper, Inc.*, 51 Ill.App.3d 568, 578, 9 Ill.Dec. 304, 313, 366 N.E.2d 561, 570 (1977); *Weiland Tool & Mfg. Co. v. Whitney*, 100 Ill.App.2d 116, 133, 241 N.E.2d 533, 540 (1968), *rev'd on other grounds*, 44 Ill.2d 105, 251 N.E.2d 242 (1969); *Geohegan v. Union Elevated RR.*, 266 Ill. 482, 492, 107 N.E. 786, 791 (1915). Illinois statutes specifically provide for prejudgment interest on amounts due on bonds, bills, notes, or other written instruments, on money wrongfully taken, and on money withheld due to an unreasonable and vexatious delay of payment.[7] Ill. Rev.Stat. ch. 74, § 2; *see Stevenson v. ITT Harper, Inc.*, *supra* at 578, 366 N.E.2d at 570.

Plaintiffs in the present case may be entitled to prejudgment interest under the last provision of this statute. There is no serious question that one or both of the principal defendants (American and McDonnell Douglas) is liable for the death of the passengers aboard flight 191. There is also no question that plaintiffs' damages arose and were calculable as of the date of the crash. Nevertheless, defendants have not paid for plaintiffs' losses in the pending cases. Plaintiffs intimate in their brief that the defendants are dragging, or may drag, their feet, blaming each other or otherwise attempting to complicate the issue of liability and extend the litigation in order to earn interest on the amounts which they ultimately may have to pay as damages. The amount of damages in these cases has been estimated at between 115 and 500 million dollars. The interest that the defendants or their insurers may earn, and plaintiffs may

lose, based on the current average rate on short-term United States Treasury Notes of 10%, is between 11.5 and 50 million dollars per year or between $31,800 and $137,200 per day.[8] There is, therefore, a real incentive for the defendants to delay payment as well as to urge plaintiffs to accept lesser amounts in settlement than they might secure after a trial. In the future, plaintiffs may be entitled to prejudgment interest under the Illinois interest statute on the grounds that defendants unreasonably and vexatiously delayed paying damages.

We note also that, as in the case of the federal interest statute discussed above, the absence of a specific provision in the Illinois interest statute for prejudgment interest does not foreclose an award of prejudgment interest if another state statute or applicable principles of equity provide for it. Accordingly, we must examine other statutes as well as applicable equitable considerations.

The Illinois wrongful death statute, Ill. Rev.Stat. ch. 70, § 2, provides:

[T]he jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person.

The statute does not expressly provide for prejudgment interest. However, "fair and just compensation with reference to the pecuniary injuries resulting from such death" under particular circumstances may require or warrant prejudgment interest. Al-

---

6. In *Chicago & Northwestern RR. v. Schultz*, 55 Ill. 421 (1870), the Illinois Supreme Court seemingly approved an award of prejudgment interest even though such interest was not provided by statute. *Id.* at 424. In a later case, however, the court warned that this "approval" was dictum only, and stated that prejudgment interest normally is unavailable. *Toledo, Peoria & Warsaw RR. v. Johnston*, 74 Ill. 83, 83–84 (1874). Still later cases have held that prejudgment interest is available only when provided by agreement of the parties or by statute.

7. Ill.Rev.Stat. ch. 74, § 2, provides:

Creditors shall be allowed to receive at the rate of five (5) per centum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; on money due on the settlement of account from the day of liquidating accounts between the parties and ascertaining the balance; on money received to the use of another and retained without the owner's knowledge; and on money withheld by an unreasonable and vexatious delay of payment.

8. Interest as high as 14% or 15% is currently being paid by a number of institutions on six-month certificates of deposit on principal amounts of $100,000 or more.

though there are no Illinois cases dealing with this question,[9] courts in other jurisdictions faced with substantially the same language in their wrongful death statutes have concluded that prejudgment interest is an essential part of "fair and just compensation."

For example, in *National Airlines, Inc. v. Stiles*, 268 F.2d 400 (5th Cir. 1959), the court held that prejudgment interest is available under the Death on the High Seas Act, 46 U.S.C. § 761, even though that statute does not specifically provide for it. The relevant language in the Death on the High Seas Act is remarkably similar to the relevant language in Illinois' wrongful death statute. The Death on the High Seas Act provides that damages shall be "fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought . . . ." 46 U.S.C. § 762. "Fair and just compensation" includes prejudgment interest, the court held, since,

> Logically and sensibly, if the pecuniary loss to Mrs. Stiles for the death of her husband is $250,000 based on an expectancy of 20.2 years from the date of his death, she will not receive full value for her pecuniary loss if she does not receive the award until after judgment four and one-half years later.

*National Airlines, Inc. v. Stiles, supra* at 405. *Accord Dennis v. Central Gulf Steamship Corp.*, 453 F.2d 137, 141 (5th Cir. 1972).

Similarly, in *Wetz v. Thorpe*, 215 N.W.2d 350 (Iowa 1974), the court held that prejudgment interest is available under Iowa's wrongful death statute even in the absence of a specific provision for it. The Iowa statute provides for damages "in such sum as the jury deems proper." Iowa Code § 613.15. The court held that an allowance of interest from the date of death was necessary to compensate fully for the plaintiff's losses. *Accord Lemrick v. Grinnell Mutual Reinsurance Co.*, 263 N.W.2d 714 (Iowa 1978).

Like the courts in *Stiles* and *Wetz*, we believe that "fair and just compensation" must include interest on a judgment in a wrongful death case from the date of death. The losses suffered by the decedent's survivors arise at the moment of the decedent's death; the award of judgment in a subsequent wrongful death suit is merely an *ex post facto* determination of a preexisting obligation.[10] Unless prejudgment interest is available, the survivors suffer the additional loss of the income from the damages they incurred on the date of death.

The Alaska Supreme Court recognized the anomalous result that occurs when prejudgment interest is unavailable. In *State v. Phillips*, 470 P.2d 266 (Alaska 1970), the court noted,

> [i]f C wins his judgment a year later than does B and does not get prejudgment interest for the year, C recovers less than B for the same injury; . . . . Only by awarding prejudgment interest from the time the cause of action accrues, when a plaintiff is entitled to be made whole, can the sort of injustice which happened to C . . . be avoided.

*Id.* at 274. In *Beech Aircraft Corp. v. Harvey*, 558 P.2d 879 (Alaska 1976), the Alaskan Supreme Court again noted that "prejudgment interest is in the nature of compensatory damages . . . ." *Id.* at 888.

■ Prejudgment interest, we believe, is an essential element of full compensatory damages. Accordingly, we conclude that it is an essential element of "fair and just compensation" under the Illinois wrongful death statute.

In summary, we conclude, without having to reach the question of which state's law applies in these cases, that prejudgment interest is available.

### III.

■ There are equitable grounds as well for our concluding that prejudgment inter-

---

9. Happily, there have been few tragic accidents of the magnitude of the May 25, 1979, disaster involved here. Neither the magnitude of the damages nor the interest which may be gained by the defendants and lost by the plaintiffs has been in any way comparable.

10. At the same time, the defendant is unjustly enriched to the extent it has free use of this money in the period between the death and the judgment. *See Prejudgment Interest as Damages: New Application of an Old Theory*, 15 Stan.L.Rev. 107, 109 (1962).

est is available in the present cases. This Court's primary responsibility is to insure the fair, just, and speedy disposition of cases. Meeting this responsibility is an increasingly difficult task as new, unexpected problems arise and more complex and multifaceted cases face the courts. Courts frequently discover that traditional solutions to traditional problems do not always work when applied in unusual cases. Fortunately, our system is not static, but is adaptable to changing needs and extraordinary situations.[11] *See Collins v. United Mine Workers of America Welfare and Retirement Fund of 1950*, 298 F.Supp. 964, 967 (D.D.C.1969).

The instant cases present an extraordinary situation. As was mentioned earlier, there is no serious question that one or both of the principal defendants is liable for the death of the passengers aboard flight 191. Yet, because the total amount of damages involved in these cases is so large and the interest accumulating on it is so substantial, there is a real incentive for the defendants to postpone paying the plaintiffs. Moreover, the loss to the plaintiffs of the interest which, but for this delay, they would earn on their recoveries is also very large. Consequently, there are substantial equitable considerations which, under our general equitable powers, compel the award of interest from the date of death to the date of payment of the damages. As between the defendants whose liability is not seriously contested and the plaintiffs who have suffered substantial loss as a result of defendants' actions, it is grossly inequitable to permit the defendants to gain $137,000 or more per day in interest on amounts owed to plaintiffs from the date of death simply because the mechanics of payment inevitably take time.

Moreover, as the Alaska Supreme Court pointed out, it is also inequitable to have one plaintiff receive substantially more or less than another even though the amount of the judgment or settlement is the same solely because months or years intervene between the judgments or settlements. As previously indicated, estimates as to the aggregate damages resulting from the approximately 275 deaths and injuries range from 115 to 500 million dollars. The average claim will probably be at least $1,000,-000. The monthly interest on $1,000,000 at 10% is over $8,333 or $100,000 per annum. It is obviously unjust that some survivors benefit while others are penalized because of the largely fortuitous timing of the trial or settlement of their claims.

The law recognizes the earning potential of money by requiring that an award for future damages such as lost future income be discounted to its present value. It is inequitable to allow a defendant in a wrongful death action to obtain the benefit of discounting any judgment to present value while not allowing a plaintiff to obtain the benefit of prejudgment interest. Under the general rules governing damages in a wrongful death action, a trier of fact takes into account postjudgment interest and discounts any judgment to compensate for interest which the plaintiff can earn on it. The benefit to the defendant of this accounting in determining damages is apparent. However, inequity obviously results if the defendant gets the advantage of this accounting for postjudgment interest but the plaintiff does not get the corresponding advantage of prejudgment interest.

Recognizing these inequities, federal courts have found ways of solving the problem. In *Mayer v. Braniff Airways, Inc.*, 310 F.Supp. 149 (N.D.Ill.1970), for example, the court dealt with seventeen claims for dam-

---

11. The *Manual for Complex Litigation* (1977) recognizes the need for flexible procedures to deal with new problems. In the forward to the *Manual*, the Board of Editors states:

In the last twenty years, every successful profession and business has been compelled to develop and employ revolutionary methods of research, planning and operations to serve an increasing population and the current revolution in science, technology, transportation, communications, education and industry.

[I]f the administration of justice by the courts is to be effective, the Bench and Bar must devise and employ new procedures which will increase the efficiency and improve the quality of justice. . . .

ages, totalling over 2½ million dollars, which arose from the crash of a Braniff flight near Falls City, Nebraska. Several parties were named as defendants. Then Chief Judge Campbell recognized the incentive that the defendants had for delay and the losses that this delay would occasion for the plaintiffs. He concluded that, since the plaintiffs in those cases were unquestionably entitled to recover from one or more of the defendants, they should not be made to wait for payment while the defendants determined which of them was liable. Accordingly, he ordered the defendants to deposit with the court a sum equal to the estimated amount of damages in all the cases. As the damages were determined in each individual case, payment was made to the plaintiffs from this fund. The effect of Judge Campbell's order was to reduce the incentive for delay and to speed disposition of the cases. This procedure also helped to solve the problem of a plaintiff's damages being compounded by the loss of the use of the money in the period between the accident and final recovery of damages.

Judge Campbell's innovative decision in *Mayer* illustrates the ability of federal courts to develop procedures to prevent delays and insure that plaintiffs receive the full amount of damages to which they are entitled.[12] His creation of a damage fund is not, however, the only method a court can use to insure fair and expeditious disposition of litigation of this type. By including prejudgment interest as part of the damages, the same goals can be achieved.

### IV.

 Although we conclude that prejudgment interest is available in these cases, we cannot grant summary judgment on plaintiff's claim for prejudgment interest in *Kahmi v. McDonnell Douglas Corp.,* No. 79 C 2272. Prejudgment interest is awarded only to prevailing plaintiffs. We could grant summary judgment on the issue of prejudgment interest in this case only if we first granted summary judgment on the

issues of liability and damages. *See Triangle Ink & Color Co. v. Sherwin-Williams Co.,* 64 F.R.D. 536, 537 (N.D.Ill.1974). Without knowing the date of final disposition or the amount of damages to which any plaintiff is entitled, we cannot calculate the amount of prejudgment interest, if any, which such plaintiff should recover. We therefore deny plaintiff's motion for summary judgment on her claim for prejudgment interest. We will, however, include prejudgment interest as an element of damages in all instructions to juries or in calculating damages in any bench trials.

An appropriate order will enter.

---

**12.** Without ordering the establishment of a damage fund in these cases, we have suggested

that defendants consider doing so and they have declined.